UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES LOEHR,<br><br>    Plaintiff,<br>v.<br><br>COLONIAL VAN LINES, INC.,<br><br>    Defendant. | Case No. 3:23-cv-00534-ART-CSD<br><br>Order Granting and Denying Cross-Motions for Summary Judgment in Part<br>(ECF Nos. 24, 25) |

Plaintiff James Loehr hired Defendant Colonial Van Lines to transport his belongings from North Carolina to Reno. While in transport, many of Loehr's possessions were lost or damaged. Loehr sued Colonial under the Carmack Amendment to the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14706, *et seq*, for the value of his lost and damaged goods. Loehr seeks summary judgment that Colonial is liable for losing his possessions, which Colonial concedes. (ECF No. 25.) Both parties also seek summary judgment on whether the Carmack Amendment's Limitation of Liability provision applies. (ECF Nos. 24, 25.)

**I.   Factual Background**

The following facts are undisputed except as otherwise noted.

**A. Colonial Gives Loehr a Quote to Store His Belongings in Climate-Controlled Storage and Ship Them to Reno.**

In early 2022, James Loehr sought a quote from Colonial Van Lines ("Colonial") to move his belongings from Wilmington, North Carolina, to a house in Reno, Nevada, that he expected to finish building the following year. (ECF No. 25 at 5.) In his Affidavit, Loehr states that while he was obtaining a quote from Colonial, its moving coordinator Tracey Brown told him that Colonial would place his belongings in climate-controlled storage owned by Colonial in Charlotte,

1

North Carolina, until he was ready for them to be moved to Reno. (ECF No. 26-1 at 3.) A different Colonial representative later told Loehr that Colonial would instead store his belongings in climate-controlled storage owned by Colonial in Reno. (*Id.* at 4.)

Loehr's correspondence with Colonial employees show that his belongings were not sent to Charlotte or Reno, and evidence on the record suggests that Colonial did not own climate-controlled storage in either Charlotte or Reno. (*See id.* at 5; *see also e.g.*, ECF No. 26-10 at 2.)

### B. Loehr Chooses Limited Coverage for His Belongings.

In its estimate, Colonial presented Loehr with two options to indemnify his shipment: Standard Value Protection and Full Value Protection. The former provided 60 cents per pound per article up to $20,000 and was included in the price listed in Colonial's estimate. (ECF No. 24 at 2.) The latter required additional payment and needed to be purchased from a third-party insurer, MovingInsurance.com. (*Id.*) Loehr chose Standard Value Protection. (*Id.*)

Loehr confirmed his choice in Colonial's final contract, the Interstate Bill of Lading, which included a summary of coverage called the Valuation Addendum. The Valuation Addendum stated that the Standard Value Protection "provides only minimal protection that is considerably less than the average value of household goods. Under this option, a claim for any article that may be lost, destroyed, or damaged while in your mover's custody will be settled based on the weight of the individual article multiplied by 60 cents." (ECF No. 24-2 at 4.) It then provides an example: a ten-pound audio component valued at $1,000 would be reimbursed at $6.00. (*Id.*) It then states, "COMPLETE THIS PART ONLY if you wish to WAIVE the full (Replacement) Level of Protection included in the higher cost estimate . . . and instead select the LOWER Released Value." (*Id.* (emphasis in original).) Loehr wrote by hand "60 cents per pound per article" between his initials and signature affirming that he wished to waive the lower level. (*Id.*) The

2

Valuation Addendum recommends purchasing Full Value Protection. (*See id.*)

**C. Loehr's Items Are Lost and Damaged in Colonial's Possession.**

Over the next several months, various mishaps led to Colonial moving Loehr's belongings to Oklahoma, Atlanta, Los Angeles, and Carson City. (*See* ECF No. 25 at 10–13.) Loehr contacted Colonial at several points to verify if his belongings had reached a climate-controlled warehouse. (*See* ECF No. 26-1 at 6; *see also e.g.*, ECF No. 26-10 at 2.)

Colonial delivered Loehr's remaining belongings to Reno in February 2023. Both parties agree that many of Loehr's belongings were stolen, lost, or otherwise damaged while in Colonial's possession. (*See* ECF No. 24 at 4.)

## II. Procedural History

Loehr sued Colonial in this Court under the Carmack Amendment. (ECF No. 1.) Colonial filed an Answer soon after, and the parties have diligently engaged in discovery. (ECF Nos. 5, 13.)

## III. Standard of Review

A party moving for summary judgment must show that there is no genuine issue as to any material fact in the claims or defenses for which it seeks summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court resolves disputed facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Behrend v. San Francisco Zen Ctr., Inc.*, 108 F.4th 765, 768 (9th Cir. 2024). For cross-motions for summary judgment, the Court considers each party's evidence without considering which motion provided the evidence. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## IV. Analysis

Loehr argues that Colonial is undisputably liable for his lost and damaged

possessions, and Colonial concedes this point. Loehr argues that Colonial undisputably failed to limit its liability under the Carmack Act, while Colonial argues that it undisputably succeeded.

In the language of the Carmack Amendment, Loehr is a "shipper," and Colonial is a "carrier."

### A. Colonial is Liable to Loehr under the Carmack Act.

The Carmack Amendment holds carriers "liable for damage occurring to such goods that were tendered to it in good condition and arrived in damaged condition, unless the carrier establishes that the loss or damage was due to (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *See Missouri P. R. Co. v. Elmore Stahl*, 377 U.S. 134, 137-38 (1964) (internal citations omitted); *see* 49 U.S.C. §§ 14706(a), 14706(f)(2). Loehr has provided evidence, which Colonial does not dispute, that at least some of his items were lost or damaged while Colonial was transporting them.

Accordingly, the Court grants Loehr's unopposed motion for summary judgment that Colonial is liable to Loehr for Loehr's items that were lost or damaged while in Colonial's possession.

### B. Both Parties Seek Summary Judgment on the Carmack Amendment's Limitation of Liability Provision.

Under the Carmack Amendment, a carrier is fully liable for lost or damaged property unless it can show : (1) that it gave the shipper a reasonable opportunity to choose between two or more levels of liability; (2) that the shipper agreed to a particular liability limit; and (3) that the carrier issued a bill of lading that reflects the agreement to the shipper before moving the shipment. *See Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611–12 (9th Cir. 1992); *see Dynascan Tech., Inc. v. Allstates WorldCargo, Inc.*, No. CV-08-03281-MMM-RNBX, 2009 WL 10699015, at *6 n.41 (C.D. Cal. Feb. 11, 2009) (explaining that 1995 Interstate

Commerce Commission Termination Act removed requirement discussed in *Hughes* to have a compliant tariff on file with the Interstate Commerce Commission).

### 1. Colonial Provided a Reasonable Opportunity to Choose Between Levels of Liability.

To show that the shipper had a reasonable opportunity to choose between different levels of liability coverage, the carrier must show "reasonable notice of the liability limitation" and an "opportunity to obtain information necessary to making a deliberate and well-informed choice." *Hughes*, 970 F.2d at 612.

There is no genuine dispute of fact that Colonial offered Loehr a reasonable opportunity to choose between levels of liability. Colonial's Valuation Addendum to the Bill of Lading explains Full Value Protection's total coverage, states that the cheaper rate "provides only minimal protection that is considerably less than the average value of household goods," and provides an example of how the reimbursement rate applies for a lightweight, expensive item.

Loehr argues that Colonial's misrepresentations regarding climate-controlled storage in Charlotte or Reno justify finding a dispute of fact here, citing *Gallo v. Bekins A-1 Movers, Inc.*, No. 2:05-CV-00866-RLH-GWF, 2007 WL 817622. In *Gallo*, the Court found that a misrepresentation mattered to this factor because the carrier incorrectly told the shipper that full value protection covered "damages caused only by 'acts of God.'" 2007 WL 817622 at *2. Colonial did not misrepresent the nature of Full Value Protection or Standard Value Protection to Loehr, so this argument does not apply to this element.

Accordingly, the Court grants Colonial summary judgment on this element of its claim to limit liability.

### 2. Disputed Facts Prevent Summary Judgment on Question of Whether Loehr Agreed to Liability Limit.

Colonial argues that Loehr indisputably agreed to limit Colonial's liability

5

by signing the Valuation Amendment, while Loehr argues that he is entitled to summary judgment on this element because Colonial made material misrepresentations to induce Loehr to agree to limit liability.

A shipper may negate acceptance of a liability limit by showing that the carrier fraudulently induced the shipper to limit liability. In *Gallo v. Bekins A-1 Movers, Inc.*, the court held that plaintiff's testimony suggesting defendants had told the plaintiff that the moving truck carrying plaintiff's belongings would be locked and parked in a warehouse, when in fact it was not, was enough to create a question of fact about whether the plaintiff actually agreed to limit her liability. 2007 WL 817622, at *3; *see also Gummer v. Am. Choice Van Lines, LLC*, No. 3:11-CV-00808-SC, 2011 WL 5599854, at *3 (N.D. Cal. Nov. 17, 2011) (suggesting fraud in the inducement may be used as a defense to liability limit); *see also Dynascan Tech.*, 2009 WL 10699015, at *5 n.39 (C.D. Cal. Feb. 11, 2009) (same).

Viewed in the light most favorable to Loehr, a reasonable juror could find that Colonial materially misrepresented the moving plan to induce Loehr to select Standard Value Protection. *See Gallo*, 2007 WL 817622, at *3 (fraudulent inducement requires a knowing misrepresentation made to induce claimant's justified reliance) (internal citation omitted). Loehr's affidavit shows that while providing Loehr a quote, two Colonial agents told him that his belongings would be stored in a climate-controlled warehouse. One said they would be stored in Charlotte and the other said Reno. The record evidence indicates that these statements were arguably false because Colonial did not have climate-controlled warehouses in either city, nor did Colonial take Loehr's belongings to a climate-controlled warehouse. While Colonial argues that any false statements regarding climate-controlled storage were immaterial to Loehr's decision on coverage, Loehr testified that he declined Full Value Protection because he believed his belongings would be stored in one of these warehouses. From these facts, a reasonable juror could infer that Colonial's agents' statements about climate-controlled storage

made Loehr consider Colonial a lower-priced option, making it more likely that he would choose Colonial as his carrier. A reasonable juror could find Colonial's agents fraudulently induced Loehr to select Standard Value Protection instead of Full Value Protection.

Alternatively, viewed in the light most favorable to Colonial, a reasonable juror could find that Colonial's misrepresentations about climate-controlled storage were not material to the coverage issue. *See Gallo*, 2007 WL 817622, at *3 (materiality of misrepresentation to shipper's decision to limit liability a question of fact). Colonial's paperwork recommended purchasing Full Value Protection and explained the consequences of selecting Standard Value Protection.

Accordingly, disputed material facts prevent granting summary judgment to either Loehr or Colonial on whether Loehr agreed to limit liability.

### 3. Colonial's Liability Limit Appeared in the Bill of Lading.

The third factor Colonial must prove for summary judgment on its limitation of liability claim is that it provided Loehr a bill of lading reflecting their agreement to limit liability. *See Hughes Aircraft*, 970 F.2d at 611–12 (carrier must issue "a bill of lading that reflects the agreement to the shipper before moving the shipment"). Colonial provided its Valuation Amendment to the Interstate Bill of Lading to Loehr before beginning to move, but, for the reasons stated in the previous section, disputed material facts prevent finding that a valid agreement existed between Loehr and Colonial. Accordingly, the Court declines to consider this factor.

### V. Conclusion

Accordingly, the Court grants and denies both motions in part.

The Court grants Loehr's Motion for Summary Judgment (ECF No. 25) in part, holding that Colonial is liable to Loehr under the Carmack Amendment for items lost or damaged while in Colonial's possession.

7

1   The Court grants Colonial's Motion for Summary Judgment (ECF No. 24)
2 in part, finding that Colonial provided Loehr a reasonable opportunity to choose
3 between levels of liability.
4   The Court denies both motions for summary judgment in part because
5 disputed issues of fact exist regarding the remaining factors.

7   Dated this 29th day of July, 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE